Daniel, J.
The language employed in the first sentence of the forty-first section of the one hundred and seventy-first chapter of the Code, literally inter *458 preted, is broad enough to embrace a judgment confessed in the clerk’s office of a court after the court shall have commenced its session.
It declares that “in any suit a defendant may confess a judgment or decrefe, in the clerk’s office for so much principal and interest as the plaintiff may be willing to accept a judgment or decree for.” The section, however, in its second clause, provides that “the same shall be entered of record by the clerk in the order or minute book, and be as final and as valid as if entered in court on the day of such confession, except, merely that the court shall have such control over it as is give'n by the last section of this chapter,” and by said last section (the 51st) it is declared that “the court shall have control over all proceedings in the office during the preceding vacation. It may reinstate any cause discontinued during such vacation, set aside any of the said proceedings or correct any mistake therein, and make such order concerning the same as may be just.”
Notwithstanding the generality of the terms lised in the first clause of the forty-first section, the fair implication arising from reading the whole of that section and of the fifty-first section together, is, that the j udgment is to be confessed in vacation, and that it is to be subject to the same control that is given to the court over all other proceedings in the office had in vacation. Indeed, a consideration of the very nature of the subj ect, and a reference to our former practice and legislation, would seem wholly to forbid any other conclusión. In receiving the confession of judgment the clerk, pro hacvice, performs the functions of the court-functions, which, in the absence of legislative enactments, could have been performed only by the judges or justices in session in their respective courts. Prior to the passage of the act to be found in 2 P. 0.1819, App. 6, chap. 1, whilst the courts could receive a confession of judgment in any stage of *459 a cause, there was no power in the clerk to take such confession in his office. The result was that a defendant detained in custody for want of bail, though unable to give it, and insolvent, and willing to confess a judgment for the entire demand of the plaintiff, was kept in jail till the session of the court in which the action was brought. In order to relieve insolvent debtors from the long and useless imprisonment which often intervened between the times of their arrest and the sittings of the courts the act just mentioned was passed. I Rob. Pr. 136, 137. It provides that any person in custody in any civil action, on any original or mesne process, and desirous to avail himself of the privileges thereby given to insolvent debtors, may confess a judgment in the clerk’s office, at any time during vacation, for the whole amount of the plaintiff’s demand' in his writ or declaration set forth and costs, or such part thereof as the plaintiff may be willing to accept a judgment for. Such judgment, so confessed, shall be entered of record by the clerk, shall be final, shall have the same validity as if entered in open court; and the defendant may thereupon discharge himself from confinement in the same manner as if the judgment had been rendered in court.
Had the words “ at any time during vacation” been omitted the courts could never have construed the statute as intending to allow of confessions of judgment in the clerk’s office during the actual sitting of the court. Ho good end could have been accomplished, no mischief avoided by such a construction. As has been stated, the evil to be remedied was that persons were often kept in jail in the vacations or intervals between the sittings of the courts by reason of the want of some tribunal empowered to take their confessions of judgment. During the session of the court there could be no need or occasion for the vicegerency of any such tri *460 "bunal. These views, aided bv considerations of the , incompatibility involved in allowing the clerk in his office, to discharge, in the place and stead of the court, c^u™§ the session of the court, duties appropriately belonging to the- latter, and by the further consideration of the inconvenience and confusion likely to arise from such a practice, would, I am satisfied, have led the courts, in the absence of the words in question from the statute, to a construction restricting confessions of judgment in the office to the vacation. In the acts of 1839-40 (p. 46) and 1842-3 (p. 50) and in the 41st section of chapter 113 of the Code, the legislature have, omitted the use of these words. They have said nothing about the vacation. The omission, I am satisfied for the reasons stated, has proceeded from no change of policy in regard to the particular in question.
This view of the provisions of the Code on the subject does not however, as it seems to me, necessitate the conclusion that the judgment in controversy is void.
The appellee Hume charges in his bill, that the judgment was obtained by the appellant by the confession of Hunt, on the 16th day of March, 1858,' the second day of the March quarterly term of the County court of Culpeper, in the clerk’s office of the said court before the clerk’s deputy, and while the said court was in session.
The appellant in his answer denies the allegation of the bill, and says that, Hunt being indebted to him by bond (in the sum of $ 594 13) on the 15th day of March, 1858, he instituted suit upon said bond against said Hunt in the clerk’s office of the County court of Culpeper, before the hour at which the court was accustomed to sit; that said Hunt feeling under some obligation to secure to the appellant the payment of the debt, determined to give him the lien of a judgment; and for this purpose went into the clerk’s office before *461 the sitting of the court and confessed a judgment before the sworn deputy—the clerk being then otherwise engaged in said office—for said debt. This confession (lie proceeds) was not on the 16th of March, 1858, the second day of the March term, as stated in complainant’s bill, as will appear by reference to a copy of the writ and endorsement filed marked X. The writ is dated "the 15th of March, and the copy of the judgment is simply “judgment confessed in office March 15, 1858.”
There are no other proofs in the-cause. It will be seen that there is no proof, nor any direct admission in the answer, that the court did in fact hold a session on the 15th day of March at all. This may, however, I think be fairly inferred from the answer ; which at the same time, however, positively avers that the confession took place before the sitting of the court. And as the appellee charges the confession to have been made on the 16th day of March—the second day of the court— and the appellant avers and proves that it was made on the 15th of March, we are justified, ivithout any reference to the calendar, in concluding from the pleadings, that the confession was made on the first day of the term before the court commenced its session.
No objection was made to the judgment in the argument here, because of its having been confessed before the deputy clerk instead of the clerk, and the fact cannot, I apprehend, operate an}'- prejudice to the judgment, it being provided by the 8th section of chapter 163, of the Code, that the deputy “may discharge any of the duties of the clerk.”
The confession being in all other respects regular, the simple question for decision is : whether the fact, that the 15th of March was the day fixed by law for the commencement of the term of the court, of itself, or aided by the further fact that the court sat on that day, *462 renders void a confession of judgment made in the clerk’s office, on the morning of that day, before the court was opened.
For some purposes the term of a court and the time appointed by law for the holding of the court have the same legal import and meaning. Thus the law may require process to be returned,. pleadings to be filed, notices to be given, or other steps to be taken, a certain number of days before a given term of the court. A party of whom such a requirement is made, has no right to wait till the time for holding the court arrives, and then if for any cause the court is not held, avail himself of the- omission to hold it as an excuse for not having performed an act which the law required to be done a certain number of days before the court could have been-opened. In such cases the day on which the act is to be done is fixed by reference to the named term of the court with as much certainty as if it had been designated by its place in the calendar.
In other instances the word “ term” is considered as meaning not the stated time when a court should be held, but the actual session of the court. Thus, in the 28 th section of the 169th chapter of the revised Code of 1819, it is provided, that when any prisoner committed for treason or felony shall apply to the court the first day of the term by petition or motion, and shall desire to be brought to his trial before the end of the term, and shall not be indicted in that term, unless it appear by affidavit that the witnesses against him cannot be produced in' time, the court shall set him at liberty upon his giving bail to appear at a day, to be appointed, of the succeeding term. That every person charged with such crime who shall not be indicted before, or at the second term after he shall have been committed, unless the attendance of witnesses against him appears to have been prevented by himself, shall be discharged from his *463 imprisonment, if he be detained for that cause only; and if he be not tried at or before the third term after his examination before the justices, he shall be forever discharged of the crime, unless such failure proceed from any continuance granted on the motion of the prisoner, or from the inability of the jury to agree on their verdict. In the case of Santee, 2 Ya. cases 363, the prisoner was remanded for trial by the examining court in July, 1822; at the October term of the Superior court that court did not sit; at the May term succeeding the cause was continued for the Commonwealth; and at the third term in October, 1823, the court failed to sit; and the question to be decided by the general court was whether under the act aforesaid the prisoner was entitled to be forever discharged of the crime; and this question turned on the meaning of the word term as used in the act. The minority of the 'judges, speaking, through Judge Parker, held that in common parlance the term of a court meant the period assigned by law for the holding of the court; and that this was the sense annexed to it by the legislature. That the word was employed in this sense in reference to all three of the terms of the court mentioned in the act. That though, to entitle a prisoner to bail if not indicted the first term, it was necessary there should be a court long enough to enable the prisoner to make an application to be bailed, that being a preliminary step, it did not follow that court and term were used by the legislature in the passage relating to the first term, as synonomous. And that in respect to the second and third terms, no application by the prisoner to the court at either of said terms, was required in order to entitle him to the rights and privileges growing out of the failure of the Commonwealth to indict him at the second, and to try him at the third term after his examination; and that it was clear beyond all doubt that the word term in the passage rela *464 ting to the second and third terms was intended to mean the stated time for holding the court; and that three terms having passed without a trial, the prisoner was en^e(^ te his discharge. On the other hand Judge Dade, in delivering the opinion of the majority of the judges, said, “If the word term had a fixed and definite meaning in all cases whatsoever, this court would probably never have had' to decide this question. But upon reference to the books we can derive no satisfactory conclusion from them. An author indeed (Jacobs’ Law Dictionary title Term) defines the terms as ‘those spaces of time wherein courts of justice are open for all that complain of Avrongs and injuries and seek their rights by course of law and action in order to their redress; and during which the courts in "W estminister Hall sit and give .judgments &c’. And this definition favors the construction which would make them synonymous with courts. But it cannot be denied that in common parlance in some of the statutes and amongst the law writers the word has been often indiscriminately used to express the actual session of the court, and thé stated time when it should sit.' This gives room for construction, arid imposes the necessity of enquiring into the reason of this law; of considering the word in the context and' Comparing the relatiATe provisions of the section, so as to ascertain the sense in which the word was used by the legislature in this particular law; and upon the result of this enquiry the decision of this question turns.” Proceeding to examine and comment on the several clauses of the section, he came to the conclusion, that in each of the passages in Avhich the word was used it Avas intended to denote not the time appointed for the holding of the court, but the actual sitting of the court; and that as there was no court either at the first or third term, there had been no failure to try the prisoner at the third term in *465 the true meaning of the statute; and that the prisoner had shown no right to his discharge; and the court accordingly refused to discharge the prisoner.
In speaking of the operation and force of judgments in reference to the times at which they were rendered, it is often said by judges and text-writers, that at the common law the whole term is regarded as but one day, and that all the judgments therein relate to the first day thereof, and overreach all intermediate conveyances of the debtors’ lands. Yet there are several well recognized exceptions to this rule. And Judge Green, in delivering the opinion of the court in Coutts v. Walker, 2 Leigh 268, expressed the .opinion, that the exceptions might well apply to all cases in which it appeared that the plaintiff’s case could not be matured for judgment on the first day of the term. And in the case of Skipwith v. Cunningham, 8 Leigh 271, it was held that the term of a court was not to be considered as necessarily commencing on the day appointed by law for its commencement; and a deed admitted to record on the day appointed for commencing a term, but before the day on which the court actually commenced its session, was adjudged to be unaffected by the lien of a judgment rendered during the term. Judge Tucker in delivering the opinion of the court said—“But admitting that the judgment relates back to the first day of the term, I cannot pursuade myself that we ought to consider the term as commencing on the day appointed by law for its commencement, although in point of fact the court was not held until the third day afterwards. There is no analogy between such a case and the session days of the terms in the English courts; and the extension of the fiction of relation to embrace a period when the court was to no intent whatever in session, would be unreasonable and without precedent. I should certainly be averse to any such extension, having in fact very *466 great doubt of the wisdom of the fiction at best; and as there is no precedent to bind me I shall not be the first to make one. I shall consider the judgment as relating back to the first day of the term and the first moment of that day; but I look upon the day on which the court commenced its session as being the first day of the term.”
Consistently with this, and as was to have been naturally expected from the correlativeness of the words, we find that there is a like want of uniformity in the meaning attached to the word Vacation, and that it is employed indiscriminately in several different senses. Jacobs in his Law Dictionary, (title Vacation)' defines it as being “ all the time between the end of one term and the beginning of another; and,” he adds, “it begins the last day of every term as soon as the court rises.” Burrill (title Vacation.) speaks of it as the “intermission of judicial proceedings—the recess of courts—the time during which courts are not.held.” And he also quotes the definition of Jacobs.
Thus, whether we look to its own appropriate definition, or seek to deduce its meaning from the use made of its correlative by the law writers, it would seem that there is not attached to the word vacation, a well ascertained, fixed, single, unvarying, technical meaning which is to control the interpretation of a statute in which the word has been employed; but that, on the contrary, there are several well received meanings of the word, from which it is our duty to select that, which, looking to the whole scope and true purpose of the law, will most probably carry out the intention of the legislature.
In view of the evil sought to be cured by the act of 1819, to wit, the useless and unnecessary imprisonment of debtors, we can see no reason for supposing that the legislature in framing the law of 1819 intended to leave an interval in which a party detained for want of bail *467 could not confess judgment either in the clerk’s office J ° # or in court. And as1 the language of the statute readily admits of an interpretation extending the period during which the clerk may take confession in his office, to the commencement of the actual sitting of the court, no reason is perceived why we should not adopt that interpretation. It is true that since the abrogation of our system of laws relating to bail, the argument against the intention of the legislature to allow of such an interval in the present law, is without one of the grounds on which it formerly rested. Nor, however, (it may with equal propriety be said,) is there the same necessity now for allowing judgments to be confessed in the clerk’s office at all. Tet they are allowed, doubtless from considerations of public convenience, and as there is clearly in the new law continuing the indulgence, nothing to narrow or abridge the limits of the period within which the confession of judgment may be made in the office, there is obviously no rule of construction which would require us to contract the boundaries of such period.
The argument of incongruity in allowing judgment to be entered, both in the clerk’s office and in the court on the first day of the term, may be urged with equal force against allowing the like state of things to occur on the last day of the term; yet according to the authority already cited (Jacobs) the vacation begins the last day of the term as soon as the court rises.- In this view of the law a judgment confessed in the clerk’s office on the last day of a term after the court has closed its session, would be as valid as if entered in court on the same day; and. this being so, what reason have we for declaring that a judgment entered in the office on the first day of the term before the court has commenced its session, shall be void ?
According to our practice there is no legal incompati *468 bility or absurdity in the same judge’s sitting and rendering judgments in two courts on the same day. In such cases it has not been supposed by our judges that, in order to give full efficacy to the orders and. judgments of either of the two courts, it w'as necessary to vacate the orders and judgments of the other. The circuit court law of 1819, (see Revised Code of 1819) required that each of said courts should sit until the business thereof was dispatched, unless the judge holding the same should be compelled to leave the court in order to arrive in time at the next succeeding court of his circuit, or at the general court. And the general court law, 1 Revised Code 219, required said court to be holden at the capitol in the city of Richmond twice in every year, namely, on the 15th of June and 15th of November. In Mendumis case, 6 Rand. 704, judgment passing sentence of death on the prisoner, was rendered by the Superior court of Chesterfield on the 15th day of November, the day for holding the general court. The juris-, diction of the Superior court of Chesterfield was sustained and its judgment afiirmed by the general court. That court held that if the judge of the Superior court of Chesterfield, after closing that court on tlie 15th of November, did arrive or could arrive at the capitol at any time on the same day, he would have been, in the meaning of the act, in time to hold a general court on that day; and that as it did not appear that, when the judgment was rendered in- the Superior court of Chesterfield, there was not time for the judge to arrive at the general court during the 15th, it would be presumed-that there was; Chesterfield court house being distant' from the capitol only a three hours ride and* that there-was no ground shown for vacating the- judgment of the' Superior court. Judge Rouldin, in delivering the-opinion of the court, said that sonie of the judges of the-court were in the habit of finishing the business of one *469 Superior court in the morning of the first day of the next succeeding Superior court, and sometimes of doing a good day’s business in the latter court on the same day. A like habit prevails under our present system. Members of this eourt have not unfrequently sat in the district courts of appeals with judges of the Circuit courts on the same days on which the latter had closed the session of one of their Circuit courts.
It is not believed that any inconvenience or confusion has resulted from this practice. It does not violate, or run counter to, any conceivable policy of the law, whilst its .obvious effect is to promote the dispatch of the business of the courts. The argument by analogy in favor of upholding the judgment, in controversy seems to me to apply with great foree, and to stand without any sufficient answer. And upon the whole I am for reversing the decree of the Circuit eourt, and for rendering a decree declaring the judgment aforesaid to be valid, dissolving the injunction, and remanding the cause for further proceedings.
The other judges concurred in the opinion of Daniel, J.
Judgment reversed.